1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

10

| | | |
|---|---|---|
| DENNIS A. SANCHEZ, | ) | 1:11-cv-00607 GSA |
| Plaintiff, | ) | **ORDER REGARDING PLAINTIFF'S** |
| | ) | **SOCIAL SECURITY COMPLAINT** |
| v. | ) | |
| MICHAEL J. ASTRUE, Commissioner of | ) | |
| Social Security, | ) | |
| Defendant. | ) | |
| _____ | ) | |

16

17

18                                              **BACKGROUND**

19          Plaintiff Dennis A. Sanchez ("Plaintiff") seeks judicial review of a final decision of the

20   Commissioner of Social Security ("Commissioner" or "Defendant") denying his applications for

21   disability and supplemental security income benefits pursuant to Titles II and XVI of the Social

22   Security Act.  The matter is currently before the Court on the parties' briefs, which were

23   submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate

24   Judge.[1]

25

26   _____

27          [1] The parties consented to the jurisdiction of the United States Magistrate Judge.  (*See* Docs. 11 & 14-15.)

28                                                      1

1

**FACTS AND PRIOR PROCEEDINGS**[2]

2   In August 2007, Plaintiff filed applications for disability and supplemental security

3 income benefits, alleging disability beginning July 7, 2005.  *See* AR 171-180.  Plaintiff's

4 applications were denied initially and on reconsideration, and Plaintiff requested a hearing before

5 an Administrative Law Judge ("ALJ").  AR 102-106, 108-112, 114-124.  ALJ Michael J. Kopicki

6 held a hearing and issued an order denying benefits on November 27, 2009, finding Plaintiff was

7 not disabled.  AR 9-17.  Thereafter, on February 11, 2011, the Appeals Council denied review.

8 AR 1-3.

9   **Hearing Testimony**

10   ALJ Kopicki held a hearing on October 15, 2009, in Fresno, California.  Plaintiff

11 appeared and testified.  He was represented by attorney Michael Goldberg.  Vocational Expert

12 ("VE") Jose L. Chaparro also testified.  AR 20-52.

13   Plaintiff lives with his seventy-eight-year-old father and his girlfriend in Fresno.  AR 21-

14 22.  He has two adult children who live outside the home.  AR 24.  He currently has no source of

15 income, but did receive unemployment benefits in 2008 and 2009.  He has not yet received a

16 decision on his workers' compensation claim.  AR 22-23.

17   Plaintiff was fifty-one years old at the time of the hearing.  AR 23.  He is five feet seven

18 inches tall, weighs 175 pounds, and is right-handed.  He attended high school through the

19 eleventh grade, obtained a GED and has received vocational training.  AR 23-24.  He has never

20 served in the military.  AR 24.

21   Following surgery for a rotator cuff injury to his shoulder in July 2005, Plaintiff was off

22 work for seven or eight months.  Upon his return to work, he worked two days before being

23 advised that his employer needed "further information from the doctor;" he never returned to

24 work thereafter.  AR 25; *see also* AR 40-42.  At present, Plaintiff has undergone three or four

25

26

27    [2]References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

surgeries on his right shoulder.  AR 27-28.  His current symptoms include pain and lack of

movement.  Specifically, he cannot move "upwards" or "sideways," nor can he lift anything over

his shoulder.  As an example, he cannot lift a full carton of milk from the refrigerator.  AR 28.

Plaintiff testified that he can "almost feel the piece of ligament stretching in [his] right shoulder,

and the pain is consistent."  AR 28.  As a result of his disability, Plaintiff believes he will be a

liability to any company and its employees.  AR 28-29.  Asked to rate his pain on a scale of one

to ten, Plaintiff testified the pain is a ten.  AR 29.  Plaintiff has not followed through with

physical therapy because he cannot "do the repetitious therapy" he was asked to do.  AR 29.

Further, Plaintiff testified that he spoke to his doctor about it and the doctor told him not to

follow through.  AR 29-30.  Finally, Plaintiff does take prescription medication for his shoulder

and it relieves pain, but its side effects bother his ulcer.  AR 30.  Side effects include stomach

pain, dizziness, and feeling "[k]ind of zombied out."  AR 32.  Plaintiff's medications include

Opana, Oxycodone, Cimetidine, Soma, Mobic and Tagamet.  AR 31.  He understands his

shoulder pain is something he has to live with, and he may need a replacement in the future.  AR

30-31.  The pain also makes him jumpy and angry.  AR 43.

Plaintiff also suffers from a herniated disc between the sixth and seventh vertebrae in his

spine; the injury occurred in 1996.  AR 30, 32.  His symptoms include swelling in the neck and

inflammatory pain up to his head and down his spine.  AR 32.  He takes pain medication and an

anti-inflammatory to treat it.  AR 32.  Further, because Plaintiff cannot use his right dominant

arm, he uses his left arm too much and now it is beginning to cause him difficulties.  He has

bursitis in both shoulders.  AR 32.

As a result of his physical problems, Plaintiff suffers from emotional problems.  He

sleeps a lot and no longer socializes with others.  AR 38.  He is "insecure about" himself and has

difficulty concentrating.  AR 38-39.

Plaintiff estimated he could sit comfortably for thirty to forty-five minutes.  AR 42.

Asked to estimate the amount of time he could tolerate sitting in an eight-hour day, Plaintiff

3

estimates four to five hours over the course of a workday, qualifying that he lies down at least three times during the day on average.  AR 42-43.  He can walk for a mile and a half or two miles at a time, and could stand for a couple hours at a time before needing to move and stretch.  AR 44.  When he was asked how much weight he could lift using both arms, Plaintiff estimated that he could lift twenty-five to thirty pounds, putting most of the weight on his left arm, although he has not tried doing so.  AR 44-45.  It is painful to reach for things as well.  AR 45.

When asked about a typical day, Plaintiff indicated he gets up between 10 and 11 a.m., takes his pain medications, lies down again, then tries to do something around the house, like taking out the trash.  AR 33.  He uses a riding lawn mower to care for the yard and washes dishes.  AR 33.  He does not do his own laundry.  AR 34.  Personal grooming like bathing, dressing, and grooming are painful because of his shoulder.  AR 34.  He does not do any other yard work, relying on his brother or nephew for assistance.  AR 35.  Plaintiff does have a driver's license and drives on occasion, but typically his girlfriend drives as he is "under the medication."  AR 35.  His girlfriend does the grocery shopping.  AR 35.

When he was asked about hobbies, Plaintiff indicated he works on electronics to keep busy, but is not a technician.  AR 35.  He used to enjoy fishing, lifting weights, and collecting antiques.  AR 36.  He attends church services, but does not socialize much.  While he does have family in town, he stopped attending picnics and barbecues.  AR 36.  Plaintiff watches a lot of movies, estimating he watches five to six hours of television a day.  AR 37.  He uses the computer every now and then, but is "not very good at it."  AR 37.  He does not read anymore.  AR 37.

Plaintiff previously used cocaine and participated in a drug rehabilitation program from September 15, 1997, through March 25, 1998.  AR 36-37.  He no longer uses drugs, nor does he drink alcohol.  AR 37.

1    Within the last fifteen years, Plaintiff has worked in street maintenance for the City of

2    Fresno, as a construction laborer for Irish Construction, and in production at United Cold

3    Storage.  AR 39-40.  He also briefly worked for a temporary agency.  AR 40.

4    VE Chaparro identified Plaintiff's past relevant work as: construction worker II, very

5    heavy and unskilled; highway worker, medium and semiskilled with an SVP[3] of three; stores

6    laborer, medium and unskilled; and welder-fitter, medium yet performed as heavy and skilled.

7    AR 47-49.

8    In the first hypothetical, the VE was asked to assume a hypothetical person of the same

9    age, education and work experience as Plaintiff, with the ability to lift and carry ten pounds

10    frequently and twenty pounds occasionally, with a limitation of no pushing or pulling with the

11    right upper extremity, no more than occasional climbing of ladders, ropes or scaffolds, and who

12    should avoid work activity at or above shoulder level with the dominant right upper extremity.

13    VE Chaparro indicated such an individual could not perform any of Plaintiff's past work.  AR

14    49.

15    Bearing the same hypothetical individual in mind, the VE was asked whether there were

16    other jobs in the region that the individual could also perform.  VE Chaparro indicated such an

17    individual would be capable of work as a fast foods worker, light and unskilled, DOT[4] 311.472-

18    010, with 171,500 positions available in California and 1,944,000 positions available nationwide;

19    cashier, light and unskilled, DOT 211.462-010, with 181,000 positions available in California,

20    and 1,797,000 positions available nationwide.  AR 50.  Additionally, the individual could work

21    as a parking lot attendant, light and unskilled, DOT 915.473-010, with 6,100 positions available

22    in California and 35,000 positions available nationwide.  AR 50.

23    In a second hypothetical question, the VE was asked to assume the same hypothetical

24    worker with the additional limitation of being off task three to four times a day for about ten to

26    [3]"SVP" refers to specific vocational preparation.

27    [4]"DOT" refers to the Dictionary of Occupational Titles.

28    5

fifteen minutes due to the side effects of medications and pain, and who would require redirection by a supervisor.  AR 50-51.  VE Chaparro indicated such an individual could not perform any of the positions previously identified as available.  AR 51.

**Medical Record**

The entire medical record was reviewed by the Court.  AR 263-579.  The medical evidence will be referenced below as necessary to this Court's decision.

**ALJ's Findings**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 9-17.

More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 31, 2006, the onset date.  AR 11.  Further, the ALJ identified right shoulder arthritis and rotator cuff tear - status post multiple surgeries, and a history of a herniated disc in the cervical spine as severe impairments.  AR 11-12.  Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments did not meet or exceed any of the listed impairments.  AR 12.

Based on his review of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to lift and carry twenty pounds occasionally and ten pounds frequently, to sit, stand or walk for six hours in an eight-hour workday, yet must avoid pushing or pulling with his dominant right upper extremity, but may climb occasionally, and avoid work activity at or above shoulder level with the right upper extremity, and strenuous overhead work with the left upper extremity.  AR 12-16.

Next, the ALJ determined that Plaintiff was not capable of performing his past relevant work.  AR 16.  Nevertheless, based upon Plaintiff's age, education, work experience and RFC, the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  Specifically, the ALJ found Plaintiff could perform the work of a fast food worker, cashier, or parking lot attendant.  AR 16-17.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

1

## **DISCUSSION**

2

### *Sequential Evaluation*

3      Pursuant to Title 42 of the United States Code section 1382c(a)(3)(A), in order to qualify

4  for benefits, a claimant must establish that he or she is unable to engage in substantial gainful

5  activity due to a medically-determinable physical or mental impairment which has lasted, or

6  which can be expected to last, for a continuous period of not less than twelve months.  The

7  evidence must show that the claimant has a physical or mental impairment of such severity that

8  he or she is not only unable to do his or her previous work, but cannot, considering age,

9  education, and work experience, engage in any other kind of substantial gainful work which

10 exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d at 1456.

11     In an effort to achieve uniformity of decisions, the Secretary has promulgated regulations

12 which contain, inter alia, a five-step sequential analysis to be employed by the ALJ in

13 determining whether a claimant is physically or mentally disabled.  *See* 20 C.F.R. §§

14 404.1520(a)-(e) & 416.920(a)-(g).  If, during any point of this review, it is determined that the

15 claimant is not disabled, the claim is not to be considered further.  *See* 20 C.F.R. §§ 404.1520(a)

16 & 416.920(a).  This five-step analysis can be summarized as follows: (1) determination of

17 whether the claimant is engaged in substantial gainful activity; if so engaged, the claimant is not

18 presumed disabled and the analysis ends; (2) if not engaged in substantial gainful activity,

19 determination of whether the claimant has a severe impairment; if not, the claimant is not

20 presumed disabled and the analysis ends; (3) if the claimant has a severe impairment,

21 determination of whether any such severe impairment meets any of the impairments listed in the

22 regulations;[5] if so, the claimant is disabled and the analysis ends;[6] (4) if the claimant's

23

24  _____

      [5]*See* 20 C.F.R. Part 404, Subpt. P, App. 1 ("Appendix 1").

25

26    [6]If a claimant is found to have an impairment which meets or equals one of the listed impairments, a
   conclusive presumption of disability applies and the claimant is entitled to benefits. *See Marcia v. Sullivan*, 900 F.2d
   172 (9th Cir. 1990) (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)); *Key v. Heckler*, 754 F.2d 1545,
27  1548 (9th Cir. 1985).

28                                                                    8

impairment is not listed, determination of whether the impairment prevents the claimant from

performing his or her past work;[7] if not, the claimant is not presumed disabled and the analysis

ends; and (5) if the impairment prevents the claimant from performing his or her past work,

determination of whether the claimant can engage in other types of substantial gainful work that

exist in the national economy;[8] if so, the claimant is not disabled and the analysis ends.

The claimant has the initial burden of proving the existence of a disability within the

meaning of the Social Security Act. *Terry v. Sullivan*, 903 F.2d at 1275. The claimant establishes

a prima facie case of disability by showing that a physical or mental impairment prevents him or

her from engaging in his or her previous occupation (steps 1 through 4 in the analysis outlined

above). *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) &

416.920(f).  However, once the claimant establishes a prima facie case of disability, the burden

of going forward with the evidence shifts to the Secretary. *Hammock v. Bowen*, 867 F.2d 1209

(9th Cir. 1989).  The Secretary bears the burden of establishing the existence of alternative jobs

available to the claimant, given his or her age, education, and medical-vocational background

(step 5 in the analysis outlined above).  In an appropriate case, the Secretary may meet this

burden through application of the medical-vocational guidelines set forth in the regulations.[9]  *See*

20 C.F.R. Pt. 404, Subpt. P, App. 2 ("Appendix 2"); *Heckler v. Campbell*, 461 U.S. 458 (1983);

*Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983).  If the guidelines do not accurately describe a

claimant's limitations, the Secretary may not rely on them alone to show availability of jobs for

---

[7]At this stage of the analysis, the ALJ should consider the demands of the claimant's past work as compared with his or her present capacity for work. *Villa v. Heckler*, 797 F.2d 794, 797 (9th Cir. 1986) (citations omitted); 20 C.F.R. § 416.945 (a).

[8]At this stage of the analysis, the ALJ should consider the claimant's residual functional capacity and vocational factors such as age, education, and past work experience.  20 C.F.R. §§ 404.1520(f) & 416.920(f).

[9]For any given combination of factors (residual functional capacity, age, education, and work experience), the guidelines direct a conclusion of disability or nondisability when they accurately describe a claimant's particular limitations.

1   the claimant. *Desrosiers v. Secretary*, 846 F.2d 573 (9th Cir. 1988).[10]

2      ***Diagnosis versus Disability***

3      Plaintiff is advised that the mere diagnosis of an impairment is not sufficient to sustain a

4   finding of disability. *Key v. Heckler*, 754 F.2d at 1549. Therefore, despite Plaintiff's assertions

5   that he has been diagnosed with significant impairments to his right shoulder, as well as his

6   spine, these diagnoses alone do not entitle him to a finding of disability.

7      In fact, ALJ Kopicki's findings acknowledge the severity of Plaintiff's shoulder

8   impairments, and also recognize the herniated disc in his cervical spine. *See* AR 11. But those

9   findings do not preclude the ALJ from finding that Plaintiff is capable of performing some other

10  work - work that would take into account the limitations caused by those severe impairments -

11  and thus is not disabled.

12     ***Analysis of Plaintiff's Complaint***

13     This Court interprets Plaintiff's complaint to assert the following errors by the ALJ: (1)

14  Plaintiff's depression should have been found to be a severe impairment; (2) the medical

15  opinions were not properly considered; (3) the credibility determination is erroneous; and (4) the

16  hypothetical questions posed to the VE were improper. (*See* Doc. 19.)

17         **A.    *Plaintiff's Depression***

18     Plaintiff references his depression, including a desire to be left alone, the need for

19  increased sleep, and crying, throughout his complaint. Therefore, this Court construes these

20  references to amount to a claim that the ALJ erred at step two of the sequential analysis by not

21  finding Plaintiff's depression to be a severe impairment.

22

23  ───────────────

24     [10]However, the mere allegation of the presence of a non-exertional impairment is not sufficient to preclude
    application of the guidelines. Such non-exertional impairment must be found to significantly limit the range of work
    permitted by a claimant's exertional limitations before the Secretary will be required to obtain expert vocational

25  testimony regarding the availability of other work. *See, e.g.*, *Polny v. Bowen,* 864 F.2d 661 (9th Cir. 1988);
    *Burkhart v. Bowen*, 856 F.2d 1335 (9th Cir. 1988); *Razey v. Heckler*, 785 F.2d 1426, 1430 (9th Cir. 1986) (modified

26  794 F.2d 1348 (1986)); and *Perminter v. Heckler*, 765 F.2d 870 (9th Cir. 1985). Pain has been recognized as a non-
    exertional limitation which can significantly limit one's ability to perform basic work skills. *See Perminter,* 765 F.2d

27  at 872.

28                                    10

1    At step two of the sequential evaluation process, the ALJ must conclude whether Plaintiff

2    suffers from a "severe" impairment.  The regulations define a non-severe impairment as one that

3    does not significantly limit the claimant's physical and mental ability to do basic work activities.

4    An impairment is not severe "if the evidence establishes a slight abnormality that has 'no more

5    than a minimal effect on an individual's ability to work.'"  *Smolen v. Chater*, 80 F. 3d 1273,

6    1290 (9th Cir. 1996).  To satisfy step two's requirement of a severe impairment, the claimant

7    must prove the existence of a physical or mental impairment by providing medical evidence

8    consisting of signs, symptoms, and laboratory findings; the claimant's own statement of

9    symptoms alone will not suffice.  20 C.F.R. §§ 404.1508 & 416.908.  The effects of all

10   symptoms must be evaluated on the basis of a medically determinable impairment which can be

11   shown to be the cause of the symptoms.  20 C.F.R. §§ 404.1529 & 416.929.  An overly stringent

12   application of the severity requirement violates the statute by denying benefits to claimants who

13   do meet the statutory definition of disabled.  *Corrao v. Shalala,* 20 F.3d 943, 949 (9th Cir. 1994).

14   The step two inquiry is a *de minimis* screening device to dispose of groundless or

15   frivolous claims.  *Bowen v. Yuckert,* 482 U.S. 137, 153-154 (1987).  Further, the ALJ must

16   consider the combined effect of all of the claimant's impairments on his ability to function,

17   without regard to whether each alone was sufficiently severe.  42 U.S.C. § 423(d)(2)(B).  The

18   combined effect "shall be considered throughout the disability determination process.  *Id*.  The

19   adjudicator's role at step two is further explained by SSR 85-28:

20         A determination that an impairment(s) is not severe requires a careful
       evaluation of the medical findings which describe the impairment(s) and an
21     informed judgment about its (their) limiting effects on the individual's physical
       and mental ability(ies) to perform basic work activities; thus, an assessment of
22     function is inherent in the medical evaluation process itself. At the second step of
       sequential evaluation, then, medical evidence alone is evaluated in order to assess
23     the effects of the impairment(s) on ability to do basic work activities.

24   SSR 85-28.

25

26

27

28                                                11

1    Here, the ALJ identified Plaintiff's right shoulder injury and herniated disc in the cervical

2  spine to be severe impairments.  AR 11-12.  However, the ALJ also determined that Plaintiff's

3  depression was non-severe.  He reasoned as follows:

4           The claimant's medically determinable mental impairment of depression
        does not cause more than minimal limitation in the claimant's ability to perform
5        basic mental work activities and is therefore nonsevere.
            In making this finding, I have considered the four broad functional areas
6        set out in the disability regulations for evaluating mental disorders and in section
        12.00C of the Listing of Impairments.  These four broad functional areas are
7        known as the "paragraph B" criteria.
            The first functional area is activities of daily living.  In this area, the
8        claimant has mild limitation.  The claimant testified that he lives with his father
        and his girlfriend.  He said he takes care of his personal needs, has a driver's
9        license and drives occasionally, watches TV, and uses a computer.  He told Dr.
        Hirokawa that he also does laundry.
10           The next functional area is social functioning.  In this area, the claimant
        has mild limitation.  The claimant has admitted that he can relate to other people
11       beyond giving and receiving instruction. He testified that he lives with his father
        and girlfriend.
12           The third functional area is concentration, persistence or pace.  In this area,
        the claimant has mild limitation.  The claimant has admitted that he can
13       comprehend and follow instructions, perform simple as well as complex and
        varied tasks, and maintain a work pace appropriate to a given workload.
14           The fourth functional area is episodes of decompensation.  In this area, the
        claimant has experienced no episodes of decompensation which have been of
15       extended duration.  There is no evidence of any such event.
            Because the claimant's medically determinable mental impairment causes
16       no more than "mild" limitation in any of the first three functional areas and "no"
        episodes of decompensation which have been of extended duration, it is
17       nonsevere.

18  AR 11-12, internal citations omitted.  ALJ Kopicki carefully evaluated the medical findings in

19  this regard.  The ALJ referenced the comprehensive psychiatric evaluation performed by

20  psychiatrist Greg Hirokawa, and this Court's review of this evaluation and the medical record

21  confirms the ALJ's findings.  *See* AR 461-462, 504-515, 549-551, 552-556.

22      More particularly, following a mental status examination, Dr. Hirokawa found, in

23  relevant part, that Plaintiff's behavior was cooperative and his attitude was appropriate, his

24  psychomotor functioning was within normal limits, his speech, thought content and affect were

25  appropriate, and his mood was mildly depressed.  He was oriented times three, and was of

26  average intelligence.  AR 554.  His recent and remote memories were intact and his

27

28                                    12

1     concentration was adequate.  AR 555.  Dr. Hirokawa diagnosed a depressive disorder not

2     otherwise specified, generalized anxiety disorder, and polysubstance abuse in reported remission

3     at Axis I, and noted "Rule out personality disorder [not otherwise specified]" at Axis II.  AR 555.

4     Dr. Hirokawa identified Plaintiff's symptoms of depression and anxiety as "within the mild

5     range."  AR 555.  With regard to a functional assessment, Dr. Hirokawa determined Plaintiff is

6     mildly limited in the following areas: ability to remember location and work-like procedures;

7     ability to remember, understand and carry out very short and simple instructions; ability to

8     understand and remember detailed instructions; ability to maintain attention and concentration

9     for extended period; ability to accept instructions and respond appropriately to criticism from a

10     supervisor; ability to exhibit social judgment and awareness; ability to perform activities within a

11     schedule, maintain regular attendance and be punctual; ability to function independently and

12     sustain an ordinary routine without special supervision; ability complete a normal workday and

13     workweek without interruption from psychologically-based symptoms; ability to interact with

14     coworkers; and, ability to withstand the stress of a routine workday and to deal with changes in

15     work setting.  AR 556.

16         Simply put, Dr. Hirokawa did not find one area in which Plaintiff was more than mildly

17     limited as a result of his depression and anxiety.  Plaintiff's own statements in this regard do not

18     suffice.  In sum, the step-two finding by the ALJ that Plaintiff's depression was non-severe is

19     supported by substantial evidence in the record and is free of legal error.

20               **B.**     *The Medical Opinions*

21         Plaintiff contends throughout his opening brief that the ALJ erred by omitting references

22     to certain language stated or found within the medical evidence.  (Doc. 19.)  The Commissioner

23     contends that no error occurred.  (Doc. 20.)

24                    **Applicable Legal Standard**

25         Cases in this circuit distinguish among the opinions of three types of physicians: (1) those

26     who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

27

28                       13

(examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).  As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).  At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984).  As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician.  *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer v. Sullivan*, 908 F.2d at 506 n. 4; *Gallant v. Heckler*, 753 F.2d at 1456.  In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor.  *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).  For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians . . .."  *Magallanes*, 881 F.2d at 752.

Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also

relied on laboratory test results, on contrary reports from examining physicians, and on testimony

from the claimant that conflicted with her treating physician's opinion. *Id*. at 751-52.

Plaintiff is advised that an ALJ is not required to comment on every detail in every report.

As noted in *Vincent v. Heckler*, 739 F.2d 1393, 1394-1395 (9th Cir. 1984), "[t]he Secretary . . .

need not discuss all evidence presented to [him]. Rather, []he must explain why 'significant

probative evidence has been rejected.'" As explained below, the ALJ met this burden.

### ALJ Kopicki's Findings

The ALJ determined as follows:

> The claimant had open reduction and internal fixation on the right shoulder in May 1997 and had the hardware removed in August 1997. There is no indication of any further difficulty until he sustained a work-related injury to the shoulder in February 2005. In July 2005 he underwent repair of a right shoulder rotator cuff tear with impingement. Physical therapy records from June 2005 through December 2005 indicate the claimant had some problems using his right arm after surgery but that he did make progress. However, subsequent radiologic studies established that the surgery was unsuccessful and the claimant continued temporarily totally disabled while he awaited approval for more surgery.
>
> Treating orthopedic surgeon Dr. Thomas performed the partial rotator cuff repair in February 2007 and physical therapy and home exercises were prescribed. By August 2007 Dr. Thomas found the claimant's condition to be "permanent and stationary" and he released him to modified work involving no lifting more than 25 pounds, and no forceful pushing, pulling, gripping, twisting or overhead activities with the right upper extremity. At that time, the claimant said he was doing well; he had no limp, and his neck and upper extremities were relatively unremarkable.
>
> Concurrent records from treating physician Dr. Edwards from February 2006-July 2009 indicate he primarily treated the claimant with medication management for depression secondary to his shoulder pain. In his Permanent and Stationary report of September 18, 2007, he made no residual functional capacity assessment, but concluded that, according to Worker's Compensation guidelines, the claimant had a 10% impairment rating for his right upper extremity and a 5% rating for the whole person; he could not return to his customary work. There are only four brief statements between December 2007 and July 2009 regarding ongoing medication pain management, despite a November 2007 MRI of the right shoulder that showed a full-thickness tear of the posterior fiber of the distal tendon with tendon retraction of the related muscles and postoperative and moderate degenerative changes.
>
> In his December 2007 Agreed Medial Examiner report, orthopedic surgeon Dr. Orcutt diagnosed partial ankylosis of the right shoulder with reconstruction of a massive right rotator cuff tear and residual left acromioclavicular separation, herniated nuclear pulposus at C6-7 with left radiculitis, and partial ankylosis of the left shoulder. He agreed that the claimant's

15

condition had become "permanent and stationary" on August 13, 2007 as determined by Dr. Thomas. He concluded that the claimant cannot do heavy work with his right upper extremity, strenuous overhead work with this left shoulder, or heavy lifting and repetitive motions of the neck, and reaffirmed these limitations in July 2008. *I have adopted and incorporated Dr. Orcutt's assessment of the claimant's ability with his left upper extremity into the established residual functional capacity.*

In November 2007, Agreed Medical Examiner (Psychiatry) Dr. Gottlieb diagnosed pain disorder associated with both psychological factors and a general medical condition, alcohol abuse by history, and personality disorder not otherwise specified. He concluded that the claimant became "permanent and stationary" from a psychiatric standpoint when he reached that status physically. He rated the GAF[11] at 62, suggesting some mild symptoms for some difficulty in social, occupational or school functioning but generally functioning "pretty well," but did not assess the claimant's ability to work. However, the claimant told Dr. Gottlieb that he believed he had the ability to comprehend and follow instructions, to perform simple and repetitive tasks, to maintain a work pace appropriate to a given workload, to perform complex and varied tasks, to relate to other people beyond giving and receiving instructions, and to communicate with people and influence them.

In April 2008, the claimant's most recent psychological "primary treating physician," Dr. Richardson, agreed with Dr. Gottlieb's opinion, stating that the claimant could return to his usual job from a psychological point of view; he could return without restriction. The following month, however, Dr. Richardson signed a Worker's Compensation form stating that the claimant is to remain off work until July 29, 2008. *He gives no basis for this contradictory statement (no objective findings), and merely reiterates pain related to the claimant's right arm. Consequently, I have given little weight to this second unsubstantiated opinion.*

Concurrently, consultative psychologist Dr. Hirokawa diagnosed depressive disorder not otherwise specified, general anxiety disorder polysubstance abuse in reported remission, and rated the GAF at 61. Reporting that the claimant's mental symptoms appeared to be within the mild range and primarily due to his physical problems and associated limitation, he concluded that the claimant is only "mildly limited" in the requisite work-related abilities; specifically, he is mildly limited in his ability to understand, carry out, and remember simple and detailed instructions, deal appropriately with the public, supervisors and co-workers, maintain attention and concentration for extended periods, and withstand the stress and pressure of an 8-hour workday.

The State agency medical consultants concluded that the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours and sit 6 hours in an 8-hour workday; he can do no pushing or pulling with his dominant right upper extremity, but can climb occasionally, he must avoid work activity at or above shoulder level with the right upper extremity; the

---

[11] The Global Assessment of Functioning or "GAF" scale reflects a clinician's assessment of the individual's overall level of functioning. *American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders* 30 (4th ed. 2000) ("DSM IV"). A GAF between 61 to70 indicates: "Some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 34. The Commissioner has determined the GAF scale does not have a direct correlation to the severity requirements in its mental disorders listings.

16

claimant's depression is not severe and therefore produces no mental limitations. *I have given this opinion substantial weight because it is consistent with the opinions of the claimant's treating surgeon, treating physician and examining physicians discussed above.*

AR 13-15, emphasis added & internal citations omitted.

ALJ Kopicki agreed with the opinions of Plaintiff's treating and examining orthopedic surgeons (Thomas and Orcutt) and expressly incorporated Dr. Orcutt's limitations into his RFC findings. Thus, the ALJ did not commit any error.

The ALJ adopted the opinion of the examining psychiatrists (Gottlieb and Hirokawa) over the opinion of treating physician Richardson. In doing so, the ALJ identified specific and legitimate reasons; namely, internal inconsistency, reliance upon Plaintiff's subjective reports, and a lack of clinical findings. All are proper reasons to afford Dr. Richardson's July 2008 opinion little weight. *See Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results); *see also Buckner-Larkin v. Astrue*, 2011 WL 4361652 (9th Cir. Sept. 20, 2011) (same); *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (physician's opinion based to a large extent on claimant's own accounts of symptoms and limitations may be disregarded where those complaints have been properly discounted); *Magallanes v. Bowen*, 881 F.2d at 751 (a lack of supporting clinical findings is a valid reason for rejecting a treating physician's opinion); *Thomas v. Barnhart,* 278 F.3d 948, 957 (9th Cir. 2002) (an ALJ may also reject the treating physician's opinion because it was based on the claimant's discredited subjective complaints); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (same).

This Court has carefully reviewed the opinions referenced within the ALJ's findings (AR 398-399, 410, 434-435, 463-497, 516-547, 552-556, 559-565, 566-572) and the entire medical record. ALJ Kopicki's findings regarding the weight he afforded to the various medical opinions in this matter are supported by substantial evidence and are free of legal error.

17

### C.    *The ALJ's Credibility Findings*

This Court construes Plaintiff's complaint to present an argument that the ALJ erred in finding Plaintiff's pain complaints not credible.  (Doc. 19.)  The Commissioner contends the ALJ properly discounted Plaintiff's pain complaints.  (Doc. 20 at 8.)

A two-step analysis applies at the administrative level when considering a claimant's subjective symptom testimony.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  *Id*. at 1281-1282.  If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so.  *Id*. at 1281.  The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible."  *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001), quotations & citations omitted ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

An ALJ can consider many factors when assessing the claimant's credibility.  *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning his symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians.  *Smolen v. Chater*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (2007).  "An ALJ is not

1    'required to believe every allegation of disabling pain' or other non-exertional impairment." *Orn*

2    *v. Astrue*, 495 F.3d at 635, citation omitted.

3          The first step in assessing Plaintiff's subjective complaints is to determine whether

4    Plaintiff's condition could reasonably be expected to produce the pain or other symptoms

5    alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  Here, the ALJ found that

6    Plaintiff had the severe impairments of right shoulder arthritis and rotator cuff tear - status post

7    multiple surgeries, and a history of a herniated disc in the cervical spine.  AR 11-12.  ALJ

8    Kopicki found that Plaintiff's "medically determinable impairments could reasonably be

9    expected to cause the alleged symptoms," but that Plaintiff's statements concerning "the

10   intensity, persistence and limiting effects of these symptoms are not credible to the extent they

11   are inconsistent with the above residual functional capacity assessment."  AR 13.  This finding

12   satisfied step one of the credibility analysis.  *Smolen v. Chater*, 80 F.3d at 1281-1282.

13         "Despite the inability to measure and describe it, pain can have real and severe

14   debilitating effects; it is, without a doubt, capable of entirely precluding a claimant from

15   working."  *Fair v. Bowen*, 885 F.2d at 601.  It is possible to suffer disabling pain even where the

16   degree of pain is unsupported by objective medical findings.  *Id*.  "In order to disbelieve a claim

17   of excess pain, an ALJ must make specific findings justifying that decision."  *Id*., citing

18   *Magallanes v. Bowen*, 881 F.2d at 755.  The findings must convincingly justify the ALJ's

19   rejection of the plaintiff's excess pain testimony.  *Id*. at 602.  However, an ALJ cannot be

20   required to believe every allegation of disabling pain.  "This holds true even where the claimant

21   introduces medical evidence showing that he has an ailment reasonably expected to produce

22   some pain."  *Id*. at 603.

23         Specifically here, ALJ Kopicki made the following findings:

24         At the hearing, the [claimant] seemed sincere, but his testimony that his
           pain was 10/10 all the time is not supported by the record or by his other
25         statements.  He demonstrated use of the right arm as he reached to get some
           Kleenex at one point.  He uses a lot of pain medication, but also applied for and
26         received unemployment checks in 2009, indicating he is available, ready and
           willing to work.  Indeed, a clinical note dated July 2, 2007 reported that the

27

28                                              19

claimant stated he was fired from his job because there was no light duty, suggesting that he did not quit working [] solely for a medical reason.

He testified that he has had four surgeries on his right shoulder and has constant pain; allegedly he has been told he would eventually need a total replacement after he reaches age 65. He said he cannot sleep at night because of the pain, but admitted that his medications do help somewhat, although they sometimes make him dizzy. He also admitted that he has not participated in any recent physical therapy. He said he mows the yard with a rider lawn mower, washes dishes, drive[s] occasionally, attends church, watches TV and uses a computer. Although he said he lives with his father and girlfriend, he said he has emotional problems that make him insecure and antisocial.

The claimant's girlfriend has said he can prepare complete meals but it takes him about 15 minutes longer than before his injuries, he can make his bed, water the lawn, drive a car and go shopping. She has also indicated that he visits his grandchildren, but because of his physical limitations, doesn't like to be around people.

For the reasons mentioned, not the least the medical source opinions of record, I find the claimant's subjective complaints . . . credible only to the extent the claimant is limited as found in this decision.

AR 15, internal quotations omitted.

Here, the ALJ provided a number of specific reasons for discrediting Plaintiff's testimony, and identified specific testimony or evidence related thereto. ALJ Kopicki considered the fact the medical records indicate Plaintiff's symptoms improved with prescription medications. This is a proper consideration in assessing credibility. *Warre Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that are effectively controlled with medication are not disabling). The ALJ also noted the objective medical evidence regarding Plaintiff's physical complaints did not fully support his subjective complaints. Again, this was a proper consideration. *See Tidwell v. Apfel*, 161 F.3d 599, 601-602 (9th Cir. 1998) (finding a mild or minor medical condition with all other tests reporting normal provides a basis for rejecting claimant's testimony of severity of symptoms); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (inconsistencies between the record and medical evidence supports a rejection of a claimant's credibility). Next, the ALJ considered Plaintiff's activities of daily living and relationships with others. These too are proper considerations when making a credibility determination. *Orn v. Astrue*, 495 F.3d at 638; *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). Finally, ALJ Kopicki noted that Plaintiff received unemployment benefits during the

1   period he alleged disability, thereby indicating an ability to work.  This Court finds this too is a

2   proper consideration in a determination regarding credibility.  *See Light v. Soc. Sec. Admin.*, 119

3   F.3d at 792.

4        Moreover, the ALJ gave multiple reasons for discounting Plaintiff's testimony.  Even

5   were one reason relied upon by the ALJ in his credibility determination held to be error, any error

6   was harmless.  *See Carmickle v. Commissioner of Social Sec. Admin.*, 533 F.3d 1155, 1162 (9th

7   Cir. 2008) (*citing Batson v. Comm. of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)

8   ("So long as there remains 'substantial evidence supporting the ALJ's conclusions on . . .

9   credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility]

10  conclusion' such is deemed harmless and does not warrant reversal").

11          **D.    *Testimony of the VE***

12       Plaintiff questions the validity of the hypothetical questions posed to the VE by the ALJ.

13  (Doc. 19.)  The Commissioner counters than no error occurred, or alternatively, that any error

14  was harmless.  (Doc. 8-9.)

15       "Hypothetical questions posed to the vocational expert must set out all the limitations and

16  restrictions of the particular claimant . . .."  *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

17  The testimony of a VE "is valuable only to the extent that it is supported by medical evidence."

18  *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982).  The VE's opinion about a claimant's

19  RFC has no evidentiary value if the assumptions in the hypothetical are not supported by the

20  record.  *Embrey*, 849 F.2d at 422.  Nonetheless, an ALJ is only required to present the VE with

21  those limitations he finds to be credible and supported by the evidence.  *Osenbrock v. Apfel*, 240

22  F.3d 1157, 1165-66 (9th Cir. 2001).

23       Here, the ALJ posed two hypothetical questions to VE Chaparro.  AR 39-41.  The ALJ's

24  first hypothetical presented VE Chaparro with those limitations he found to be credible and

25  supported by the evidence; in other words, the hypothetical comported with the findings of the

26  state agency and examining physicians, and even Plaintiff's treating surgeons.  *Compare* AR 49-

27

28                                              21

51 to AR 455-459, 548-551 & 566-572.  The second hypothetical is plainly based upon

Plaintiff's own testimony.  ALJ Kopicki asked the VE two hypothetical questions: one based

upon the medical opinion and evidence, and the other based upon Plaintiff's testimony.  Yet, the

ALJ was not *required* to accept Plaintiff's testimony as credible, and thus relatedly, he was not

required to accept the VE's testimony that no work was available for such an individual.

To the degree the ALJ may have erred by referring to Plaintiff as a "younger individual

age 18-49" in his written findings (*see* AR 16), he correctly referenced Plaintiff's then-current

age when posing the hypothetical questions to the VE.  *See* AR 49 ("assuming an individual

ranging in age from - - a hypothetical individual ranging in age from 48 to, 48 to 51 years").

Thus, any error is harmless.  *See Burch v. Barnhart*, 400 F.3d at 679 ("A decision of the ALJ will

not be reversed for errors that are harmless" [citing *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th

Cir. 1990)]).

Hence, ALJ Kopicki complied with the regulations and law.  As a result, his findings are

supported by substantial evidence and are free of legal error.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by

substantial evidence in the record as a whole and is based on proper legal standards.

Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the

Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in

favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff,

Dennis A. Sanchez.

IT IS SO ORDERED.

**Dated:**   **April 30, 2012**              **/s/ Gary S. Austin**
                                           UNITED STATES MAGISTRATE JUDGE

22